IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAMIKA SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:22-CV-2816-D |
| | § | |
| YUDISEL ROMAGOZA REYES, | § | |
| a/k/a YUDISEL ROMAGOZA, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Tamika Smith ("Smith") sues defendants Yudisel Romagoza Reyes, a/k/a Yudisel Romagoza, Angela Reyes Mompie, and KY Express, LLC (collectively, "Reyes") seeking compensation for personal injuries sustained in a motor vehicle accident. Reyes moves for summary judgment, contending that Smith is judicially estopped from pursuing her claim because she filed for chapter 13 bankruptcy protection one week after she filed this lawsuit but failed to disclose this lawsuit in her bankruptcy case. For the reasons explained, the court grants Reyes' motion, concluding that Smith is judicially estopped. The court grants the trustee in her now-dismissed bankruptcy case 14 days to inform the court whether he intends to proceed with this lawsuit.

I

Smith brought this suit in state court against Reyes, alleging that Reyes caused her between $250,000 and $1,000,000 in damages arising from a motor vehicle accident. One week later, Smith filed for chapter 13 bankruptcy. In her bankruptcy case, she submitted the

required sworn schedules of assets and liabilities, but she did not disclose her personal injury claim against Reyes; instead, she checked the "No" box in response to the question on the form about "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment[.]" D. App. (ECF No. 20) at 37. One of the examples on the form for such claims was "Accidents." *Id*. Relying on Smith's representations, the bankruptcy court confirmed her chapter 13 bankruptcy plan and allocated her disclosed assets to her creditors.

Reyes removed this action to this court based on diversity of citizenship[1] and moved for summary judgment. After Reyes filed the motion, Smith amended her bankruptcy schedules twice. In her first amended bankruptcy schedules, she disclosed that she had "a pending personal injury lawsuit" against a third party, but she valued the claim at only $14,461.00. In her second amended bankruptcy schedules, Smith again disclosed the claim, added the lawsuit caption, case number, and court in which the suit was pending,[2] but stated that the value of the claim was "unknown." P. App. (ECF No. 23) at 36.

Reyes contends that he is entitled to summary judgment because Smith is judicially estopped from pursuing this lawsuit due to her failure to disclose her personal injury claim in her bankruptcy case. Smith responds that she should not be estopped because the bankruptcy court has not accepted her position and her failure to disclose her personal injury

---

[1]Smith is a citizen of Texas, and Yudisel Romagoza Reyes and Angela Reyes Mompie are citizens of Kentucky. KY Express, LLC is a citizen of Kentucky because Kentucky is both KY Express, LLC's place of incorporation and its principal place of business. The amount in controversy exceeds $75,000, exclusive of interest and costs.

[2]The lawsuit she disclosed is the instant case.

claim was inadvertent.[3] The court has heard oral argument on the motion.

II

To be entitled to summary judgment on a defense on which the moving party will bear the burden of proof at trial—like the affirmative defense of judicial estoppel—the movant "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Judicial estoppel "is 'an equitable doctrine invoked by a court at its discretion' to 'protect the integrity of the judicial process.'" *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). "[J]udicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* at 573-74. "The

---

[3]Smith does not dispute the first element of a judicial estoppel defense: that the position of the party to be estopped is plainly inconsistent with her previous position.

- 3 -

purpose of the doctrine is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Wakefield*, 293 B.R. 372, 378 (N.D. Tex. 2003) (Fitzwater, J.) (internal quotation marks and brackets omitted) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). Judicial estoppel applies when (1) the position of the party to be estopped is plainly inconsistent with its previous position, (2) the court accepted the previous position, and (3) the party did not act inadvertently. *See Reed*, 650 F.3d at 574. "Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Coastal Plains*, 179 F.3d at 205 (emphasis and citations omitted). The three elements specified in *Reed* are not "inflexible prerequisites" or part of "an exhaustive formula," and "different considerations 'may inform the doctrine's application in specific factual contexts.'" *Reed*, 650 F.3d at 574 (quoting *New Hampshire*, 532 U.S. at 751). When representations made in bankruptcy are at issue, the court should be "sensitiv[e] to the duties and goals of the overarching bankruptcy system." *Anderson v. Entergy Operations, Inc.*, 2012 WL 5400059, at *2 (S.D. Miss. Nov. 5, 2012) (citing *Reed*, 650 F.3d at 574). The court must therefore apply judicial estoppel in a way that "deter[s] dishonest debtors . . . , while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Reed*, 650 F.3d at 574. Because invoking judicial estoppel is discretionary, the court need not apply it against the offending party. *See id.*

IV

Because the court is deciding whether to invoke judicial estoppel in the context of a summary judgment motion, it will determine whether Reyes has established each of the three elements of judicial estoppel beyond peradventure.

A

Smith's counsel acknowledged at oral argument that the first judicial estoppel element is not in dispute: Smith took plainly inconsistent positions in the instant lawsuit and in her bankruptcy case. The court therefore concludes that the first element of the judicial estoppel defense is satisfied.

B

As for the second element, Reyes has established that the bankruptcy court adopted Smith's plainly inconsistent position.

1

"Adoption does not require a formal judgment; rather, it only requires that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (internal quotations omitted) (quoting *Coastal Plains*, 179 F.3d at 206). Courts have consistently held that a bankruptcy court accepts a debtor's position when it relies on her asset schedules and confirms her bankruptcy plan. This reliance need not be explicit; the court assumes reliance on the debtor's schedules when the bankruptcy court confirms the debtor's plan. *See, e.g., Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)

(citing *Coastal Plains*, 179 F.3d at 210) ("[The bankruptcy] court certainly confirmed [debtor's] plan at least in part based on its assessment of her assets and liabilities."); *Edwards v. Huntington Ingalls, Inc.*, 2011 WL 3891872, at *6 (S.D. Miss. Aug. 29, 2011) ("This Court concludes that, by confirming a Chapter 13 Plan for Plaintiff, the Bankruptcy Court relied, at least in part, on Plaintiff's bankruptcy schedules as presented[.]"); *In re Flugence*, 738 F.3d 126, 130 (5th Cir. 2013); *Abreu v. Zale Corp.*, 2013 WL 1949845, at *3 (N.D. Tex. May 13, 2013) (Fitzwater, C.J.) (addressing chapter 13).

Here, the bankruptcy court accepted Smith's inconsistent position when it confirmed her chapter 13 plan on February 9, 2023 without knowledge of her personal injury claim against Reyes. *See Flugence*, 738 F.3d at 130 (holding that the bankruptcy court accepts a prior position by "omitting any reference" to the claim in the plan because the court may have altered the plan had it been aware of the claim).

Smith maintains that the bankruptcy court did not "accept" her plainly inconsistent position because § 9.3 of her plan "incorporates all litigation proceeds prosecuted by [her]."[4] P. Resp. (ECF No. 22) at 5-6. Smith does not cite any authority for this position, and, when asked at oral argument whether she had such authority, acknowledged that she did not. Because the bankruptcy court relies on the totality of the debtor's schedules and other

---

[4]Section 9.3 of the chapter 13 bankruptcy plan states: "No settlement of any litigation prosecuted by the Debtor during the Plan Term shall be consummated without the consent of the Chapter 13 Trustee and, except as otherwise authorized by the Trustee, all funds received by the Debtor, or any attorney for the Debtor, shall be immediately rendered to the Chapter 13 Trustee for satisfaction of any authorized exemption claim of the Debtor, with the remainder of the funds dedicated as an additional component of the plan base."

- 6 -

information when deciding whether to confirm a plan, the bankruptcy court adjudicating Smith's case undoubtedly relied in part on Smith's assertion that she did not have any claims against third parties. Reyes has established the second element of judicial estoppel beyond peradventure.

2

Although neither side has raised this question, the court notes that the bankruptcy court's dismissal of Smith's bankruptcy case (for failure to make required plan payments) one day after the court heard Reyes' summary judgment motion does not affect the court's analysis of the second element. Before dismissing Smith's case, the bankruptcy court confirmed her chapter 13 plan. This plan confirmation qualifies as acceptance because the bankruptcy court accepted Smith's asset schedules as accurate at the moment of confirmation. *See Jethroe*, 412 F.3d at 599-600.[5]

---

[5]The Fifth Circuit's opinion in *In re Oparaji*, 698 F.3d 231 (5th Cir. 2012), does not impact the court's analysis of the second element. In *Oparaji* the panel discussed—but did not decide—the question whether a bankruptcy court revokes its acceptance of a debtor's chapter 13 plan by dismissing the bankruptcy. *Id.* at 238. The panel acknowledged that a bankruptcy court could "revoke" its acceptance of a debtor's chapter 13 plan on materially distinguishable facts. *See id.* at 234-38. In *Oparaji* a debtor attempted to apply judicial estoppel to preclude a creditor from pursuing in the debtor's second bankruptcy arrearages that could have been, but were not, claimed in the debtor's first bankruptcy. *See id.* at 234-35. But that situation is unlike the one here, where a creditor is attempting to apply judicial estoppel to preclude a debtor from pursuing a claim that she failed to disclose to the bankruptcy court. *See id.* at 234-38. Debtors, unlike creditors, are subject to strict disclosure requirements because a creditor has no way of knowing about a concealed asset except through a debtor's disclosure. *See id.* at 236.

C

Reyes has satisfied the third element by establishing beyond peradventure that Smith did not act inadvertently.

1

Smith can show that her failure to disclose was inadvertent by proving "either that [she] did not know of the inconsistent position or that [she] had no motive to conceal it from the court." *Jethroe*, 412 F.3d at 601. To prove lack of knowledge, Smith "must show that [she] was unaware of the facts giving rise to [the claim]," *not* that she was unaware of her duty to disclose the claims to the bankruptcy court. *Flugence*, 738 F.3d at 130. Smith knew of the facts underlying her personal injury claim because she retained counsel and notified Reyes that she was pursuing her personal injury claim on March 29, 2021. And Smith filed her lawsuit in state court on November 2, 2022 and *then* filed her original bankruptcy petition on November 9, 2022. Smith does not dispute these facts, and only maintains that she had no motive to conceal the claim. Reyes has eliminated the "lack of knowledge" basis for claiming inadvertence given the undisputed evidence that Smith knew of the facts underlying her personal injury claim when she filed for bankruptcy and during the pendency of her bankruptcy case. *See Lea v. Nissan Motor Acceptance Corp.*, 2022 WL 537959, at *3 (N.D. Tex. Feb. 23, 2022) (Fitzwater, J.).

2

Reyes has also established that Smith had a motive to conceal her personal injury claim.

"[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court' . . . because [the] 'potential financial benefit resulting from the non-disclosure'" makes the motivation in this context "self-evident." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quoting *Thompson v. Sanderson Farms, Inc.*, 2006 WL 7089989, at *4 (S.D. Miss. May 31, 2006)); *see also Allen v. C & H Distribs., LLC*, 813 F.3d 566, 574 (5th Cir. 2015).

Smith's motivation for concealment is self-evident. Her original bankruptcy schedules she did not include her personal injury claim, which would have satisfied all of her creditors had she been successful. After Reyes moved for summary judgment, Smith amended her bankruptcy schedules to include a personal injury claim of $14,461.00. But Smith maintained in the instant lawsuit that her personal injury claim was valued at between $250,000 and $1,000,000. When Smith amended her bankruptcy schedules yet again, she included a personal injury claim of an "unknown" value. Smith never disclosed to the bankruptcy court that she could potentially receive between $250,000 and $1,000,000 for her personal injury claim being litigated in this court.

Smith contends that no motivation to conceal can be inferred from her actions because it is Reyes' burden to prove that she had a motive to conceal her personal injury claim and Reyes has failed to meet this burden. Smith is correct that Reyes bears the burden as the

summary judgment movant on an affirmative defense to establish "beyond peradventure all of the essential elements of the . . . defense." *Bank One, Tex., N.A.*, 878 F. Supp. at 962. But once Reyes established that Smith had knowledge of a claim and a motive to conceal, the burden shifted to Smith to show that the failure to disclose was inadvertent. *See Love*, 677 F.3d at 262 (stating that after summary judgment movant set out motivations to conceal, it fell to the nonmovant to show that the omission of his claims from his schedule of assets was inadvertent); *see also Smith v. Dall. Cnty. Hosp. Dist.*, 651 Fed. Appx. 279, 282 (5th Cir. 2016) (per curiam). Smith has failed to establish that her failure to disclose was inadvertent or otherwise to create a fact issue regarding whether she acted inadvertently.

Smith also maintains that her recovery in this court was on behalf of her estate and she therefore did not deprive her bankruptcy estate of its ownership interest. According to Smith, the language in § 9.3 of her chapter 13 plan and in § 541(a) of the Bankruptcy Code contemplates that her recovery "would not go to her free an[d] clear of the claims of her creditors" and would instead "[become] part of the bankruptcy estate the moment she filed her petition for bankruptcy." P. Resp. (ECF No. 22) at 6. She posits that the failure to disclose the personal injury claim before she amended her bankruptcy schedules did not "deprive her bankruptcy estate of its ownership interest" and precludes a finding that she had a motive to conceal. *Id.* at 7. Smith has not cited any authority supporting her position, and the Fifth Circuit addressed and dismissed a substantially similar argument in *Love*. *See Love*, 677 F.3d at 264.

In *Love* the majority disagreed with dissent's conclusion that, "because [the debtor's]

claims . . . were the property of his bankruptcy estate and [the debtor] was obligated to pursue these claims on his creditors' behalf, [the debtor] was necessarily acting for the benefit of his creditors from the inception of his lawsuit . . . and thus had no motive to conceal his claims." *Id.* at 264 (emphasis omitted). The majority held that the debtor had a motive to conceal because, had the defendant not brought the undisclosed claim to light, the debtor could have kept the recovery for himself, even though the claims belonged to the bankruptcy estate. *Id.* The facts of the instant case are conceptually quite similar.

"It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets[.]" *Coastal Plains*, 179 F.3d at 207-08. The duty to disclose is continuous, *see id.* at 208, and applies to all *pending* and potential claims. *See Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384-85 (5th Cir. 2008) (per curiam). Smith's duty to disclose her pending personal injury claim arose from the moment she filed her bankruptcy petition on November 9, 2022. Smith failed to mention the claim in the bankruptcy court until she submitted her first amended bankruptcy schedules on August 17, 2023—almost one year after her obligation to disclose the claim arose and only after Reyes alerted this court to her plainly inconsistent position by moving for summary judgment. Moreover, neither her first nor second amended bankruptcy schedules disclosed that the claim was worth between $250,000 and $1,000,000, as alleged in this lawsuit. Smith's first amended bankruptcy schedules stated that her personal injury claim was worth $14,461.00, a grossly smaller amount than alleged in this case and an amount that would not satisfy all of her creditors. The bankruptcy court confirmed her chapter 13

bankruptcy plan without mentioning her personal injury claim. Smith's failure to disclose her personal injury claim was motivated in part by a desire to recover on the undisclosed claim without having revealed it to her creditors. *See Love*, 677 F.3d at 262.

The court concludes that Reyes has satisfied the third element of the judicial estoppel affirmative defense. Because Reyes has satisfied all three elements of judicial estoppel, he is entitled to summary judgment dismissing Smith's action on the basis that she is judicially estopped from pursuing this personal injury claim.

V

Smith contends that applying judicial estoppel in this case would not achieve substantial justice because "[Smith] will derive no unfair advantage or impose any unfair detriment [to] the opposing parties if not estopped." P. Resp. (ECF No. 22) at 7. In *Love* the Fifth Circuit also rejected these arguments. *See Love*, 677 F.3d at 263. The purpose of the judicial estoppel doctrine is to protect the integrity of the judicial process. *Reed*, 650 F.3d at 574. Applying judicial estoppel does substantial justice because "it is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible." *Coastal Plains*, 179 F.3d at 208.

Applying judicial estoppel in this case will protect the judicial process and the integrity of the bankruptcy system, which depends on full and honest disclosures by debtors. *See id.* Smith should not be allowed to recover on her undisclosed personal injury claim in this court even after her bankruptcy case was dismissed because of her failure to make required plan payments. That result would create a perverse incentive for debtors in other

bankruptcy cases to intentionally fail to disclose assets in hopes of gaining a windfall, even if discovered.

VI

Generally, "where a debtor is individually estopped from pursuing an undisclosed claim, absent unusual circumstances, an innocent trustee can pursue the claim for the benefit of creditors." *Flugence*, 738 F.3d at 131 (internal quotations and marks omitted) (quoting *Reed*, 650 F.3d at 573). This is exemplified by the recent decision of another judge of this court, who applied judicial estoppel to dismiss a debtor's claims, but did so without prejudice to allow the trustee the opportunity to pursue or waive the debtor's claims. *See Carter v. Rollie Transp. Inc.*, 2023 WL 137488, at *1 (N.D. Tex. Jan. 9, 2023) (O'Connor, J.). The Fifth Circuit has allowed trustees to pursue undisclosed legal claims even when the bankruptcy case has been closed. *See Reed*, 650 F.3d at 578-79; *United States ex rel. Long v. GSDMIdea City, LLC*, 798 F.3d 265, 276 (5th Cir. 2015). The court in its discretion will proceed similarly to *Carter* and allow the trustee in Smith's bankruptcy case to decide whether he intends to proceed with her personal injury claim.

\* \* \*

For the reasons explained, the court grants Reyes' motion for summary judgment and holds that Smith is judicially estopped from pursuing this litigation. The court grants the trustee in her now-dismissed bankruptcy case 14 days from the date this memorandum opinion and order is filed to inform the court whether he intends to proceed with this

lawsuit.[6]  If the trustee opts not to proceed, the court will dismiss this action with prejudice. If he decides to proceed, the court will issue such orders as are necessary for the case to proceed.

**SO ORDERED**.

November 29, 2023.

                                             SIDNEY A. FITZWATER
                                             SENIOR JUDGE

---

[6]Counsel for Smith and Reyes are jointly responsible for notifying the trustee of the entry of this memorandum opinion and order.